1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RICHARD GOSZTYLA,                          No.  2:22-cv-1725 KJM CSK P

12                   Plaintiff,

13           v.                                  ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14    E. GRUENWALD,

15                   Defendant.

16

17          Plaintiff Richard Gosztyla filed this pro se action pursuant to 42 U.S.C. § 1983, alleging

18   that defendant E. Gruenwald interfered with plaintiff's access to the courts and retaliated against

19   plaintiff by denying him access to the law library.  Before the Court are defendant's motion for

20   summary judgment and request for judicial notice.  (ECF Nos. 44, 44-9.)  As discussed below, the

21   Court grants the request for judicial notice, and recommends that defendant's motion for

22   summary judgment be granted.

23   **I.      PLAINTIFF'S FIRST AMENDED COMPLAINT**

24          This case proceeds on plaintiff's first amended complaint ("FAC"), filed December 1,

25   2022.  (ECF No. 9.)  In his first cause of action, plaintiff alleges that defendant, a California

26   Department of Corrections and Rehabilitation ("CDCR") officer, violated plaintiff's right to

27   access the courts in violation of the First and Fourteenth Amendments by interfering with

28

                                                  1

plaintiff's attempts to access the law library[1] at Mule Creek State Prison ("MCSP").  (Id. at 2, 4.)
Based on the FAC allegations, the relevant time period at issue here is September 14, 2021
through September 3, 2022.  Plaintiff claims he was "in the process of litigating his active
criminal appeal of a life sentence," and was "filing civil actions against MCSP staff."  (Id. at 4.)
Plaintiff alleges he submitted multiple formal grievances, attached as Exhibits A-F to the FAC,
each describing a separate incident in which defendant allegedly interfered with plaintiff's
attempts to access the law library.  (Id.)  Plaintiff claims these grievances are the most serious
incidents but represent "only a fraction" of defendant's actual interference with plaintiff's efforts
to access the law library.  (Id.)

In his second cause of action, plaintiff alleges that defendant targeted plaintiff because of
his "many formal grievances and complaints against the misconduct by Defendant Gruenwald."
(Id. at 5.)  Plaintiff alleges that after defendant refused plaintiff law library access at 8:30 a.m. on
August 30, 2022, despite his Priority Legal User ("PLU") status, plaintiff complained to inmate
and Institutional Advisory Council ("IAC") member Lacey and Sgt. Ruggerrio, who responded "I
don't mess with the O.G.," referring to defendant.  (Id. at 5, 41.)  IAC members Lacey and
Stewart then brought the issue to Lt. Cochrane.  (Id. at 5.)  Subsequently, Lt. Cochrane called in
defendant for a discussion.  (Id.)  Later that morning, plaintiff alleges that defendant cornered
plaintiff and threatened that if plaintiff "wanted to play these games," plaintiff would "get a write-
up and never get into the library."  (Id.)

On September 1, 2022, plaintiff attempted to go to the law library but was stopped by
housing unit officer Perez, who told plaintiff that defendant had called Perez and instructed Perez
not to let plaintiff out of the housing unit to go to the law library.  (Id. at 6.)  Later that same day,
when plaintiff attempted to access the law library, defendant closed the door in plaintiff's face
while laughing at plaintiff through the window, shaking his head "no," and wagging his finger
"no" at plaintiff.  (Id.)  Plaintiff alleges this constituted retaliation for plaintiff filing grievances
and for plaintiff's complaints on August 30, 2022, just two days prior.  (Id.)

---

[1]  Different sources refer to the "library" rather than to the "law library."  The Court uses such
terms interchangeably.

1    Thus, plaintiff contends that defendant took adverse action against plaintiff by denying

2    him access to the law library in retaliation for plaintiff's attempts to access the courts and file

3    formal grievances against defendant, and defendant's actions chilled plaintiff's rights and were

4    not based on legitimate correctional goals.  (Id.)

## II.    REQUEST FOR JUDICIAL NOTICE

6    Defendant asks the Court to take judicial notice of the following:  court records relating to

7    plaintiff's petitions for habeas corpus filed in state court, Case Nos. 22HC00314, C096680, and

8    S28012; court records relating to Gosztyla v. Ly, No. 2:21-cv-1717 DC CKD (E.D. Cal.); court

9    records relating to Gosztyla v. French, No. 2:21-cv-1403 DJC EFB (E.D. Cal.); and court records

10    relating to Gosztyla v. Auld, No. 2:22-cv-1276 KJM EFB (E.D. Cal.).  (Def.'s Request for

11    Judicial Notice ("RJN") (ECF No. 44-9).)

12    A court may take judicial notice of court records.  See, e.g., Bennett v. Medtronic, Inc.,

13    285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both

14    within and without the federal judicial system, if those proceedings have a direct relation to

15    matters at issue.") (internal quotation omitted).

16    The Court grants the request for judicial notice because the cited court documents are

17    "capable of accurate and ready determination by resort to sources whose accuracy cannot

18    reasonably be questioned."  Fed. R. Evid. 201(b)(2).

19    In addition, in his opposition, plaintiff claims defendant failed to include plaintiff's other

20    pending civil action, Gosztyla v. Jenkins, No. 2:22-cv-1706 TLN EFB (E.D. Cal.).  (Pl.'s Opp'n

21    at 4.)  The Court also takes judicial notice of Gosztyla v. Jenkins, No. 2:22-cv-1706 TLN EFB.

## III.    LEGAL STANDARDS FOR SUMMARY JUDGMENT

23    Summary judgment is appropriate when it is demonstrated that the standard set forth in

24    Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

25    movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

26    judgment as a matter of law."  Fed. R. Civ. P. 56(a).

27
28
          Under summary judgment practice, the moving party always bears
the initial responsibility of informing the district court of the basis
for its motion, and identifying those portions of "the pleadings,

3

> depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

1    (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3
2    (9th Cir. 2002).

3        In the endeavor to establish the existence of a factual dispute, the opposing party need not
4    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
5    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
6    trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce
7    the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
8    Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963
9    amendments).

10       In resolving a summary judgment motion, the court examines the pleadings, depositions,
11   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.
12   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at
13   255.  All reasonable inferences that may be drawn from the facts placed before the court must be
14   drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences
15   are not drawn out of the air, and it is the opposing party's obligation to produce a factual
16   predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.
17   Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to
18   demonstrate a genuine issue, the opposing party "must do more than simply show that there is
19   some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could
20   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
21   trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

22       By notice filed on July 29, 2024, plaintiff was advised of the requirements for opposing a
23   motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF No. 44-11
24   (citing Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc)).).

25   **IV.    THE PARTIES' EVIDENCE**

26       A.  Defendant's Evidence

27           1.  Declaration of Hannah Park, defense counsel ("Park Decl.").  (ECF No. 44-2.)

28           2.  Portions of plaintiff's deposition ("Pl.'s Dep.") testimony.  (ECF No. 44-2, 44-

1    3 (Ex. A).)

2        3. Declaration of B. Heath, librarian at MCSP ("Heath Decl."), and Exhibits A

3    (Pl.'s PLU requests) & B (library attendance logs).  (ECF No. 44-4, 44-5 (Ex. A), 44-6

4    (Ex. B).)

5        4. Declaration of defendant E. Gruenwald ("Def.'s Decl.").  (ECF No. 44-7.)

6        5. State and federal court filings.  (RJN & Exs. 1-13 (ECF No. 44-9, 44-10 at 1-

7    212).)

8    B.  Plaintiff's Evidence

9        1. Plaintiff's verified FAC.  (ECF No. 9.)

10       2. Grievances challenging the denial of access to the law library and responses.

11   (FAC, Pl.'s Exs. A–F (ECF No. 9 at 9-62); Pl.'s Opp'n, Exs. A–F (ECF No. 45 at 12-45).)

12       3. Requests for Interview seeking law library access and documenting denial of

13   law library access.  (FAC, Ex. G; Pl.'s Opp'n, Exs. T, U.)

14       4. Declarations from other inmates:

15           a. Declaration of Robert A. Von Villas.  (Pl.'s Opp'n, Ex. A (ECF No. 45 at

16           14).)

17           b. Affidavit of Ramiro Montanez, CDCR #F12185.  (FAC, Ex. C (ECF No. 9

18           at 34); Pl.'s Opp'n, Ex. C (ECF No. 45 at 26).)

19           c. Declarations of Stanley Mundy, CDCR #BN2899.  (FAC, Ex. C (ECF No. 9

20           at 37); Pl.'s Opp'n, Ex. I (ECF No. 45 at 60).)

21           d. Declaration of Miguel Sanchez, CDCR #BR3103.  (FAC, Ex. F (ECF No. 9

22           at 56).)

23           e. Declaration of Suriel Diaz, CDCR #BE9338.  (FAC, Ex. F (ECF No. 9 at

24           57), Pl.'s Opp'n, Ex. F (ECF No. 45 at 42).)

25           f. Declaration of Matthew Gibson, CDCR #BR4789.  (FAC, Ex. I (ECF No.

26           45 at 59).)

27       5. Declaration from Frank Gosztyla, plaintiff's father.  (Pl.'s Opp'n, Ex. Q (ECF

28   No. 45 at 112-13).)

6. Request for PLU Status granting PLU status from April 12, 2022 through May 1, 2022. (FAC, Ex. C (ECF No. 9 at 38).)

7. Complaints plaintiff filed with the IAC. (Pl.'s Opp'n, Ex. H (ECF No. 45 at 48-55).)

8. Discovery responses from defendant. (Pl.'s Opp'n, Exs. J-L, N (ECF No. 45 at 61-82; 95-103).)

9. Defendant's opposition to plaintiff's motion to compel. (Pl.'s Opp'n, Ex. M (ECF No. 45 at 83-94).)

10. A copy of the Heath Declaration, and the first page of Heath's attendance log. (Pl.'s Opp'n, Exs. O, S (ECF No. 45 at 104-08, 116 (AGO 001)).) [2]

11. Plaintiff's handwritten document titled "Cover Sheet Petition for Writ of Habeas Corpus," directed to the California Court of Appeal in No. 22HC00314. (Pl.'s Opp'n, Ex. P (ECF No. 45 at 109-11).) [3]

Plaintiff also submitted various inmate declarations either with his opposition or attached to his FAC that were not signed under penalty of perjury, which is a requirement for declarations. See 28 U.S.C. § 1746 (declaration must be signed under penalty of perjury); L.R. 101 (definition of "affidavit" citing 28 U.S.C. § 1746), 142, 260(d); see Declaration of Lacey-El, S., CDCR #E90830 (Pl.'s Opp'n, Ex. C (ECF No. 45 at 25)); Jose Ochoa, CDCR #BP2023, Ray Olvera, CDCR #C96897, Jeff Salazar, CDCR #BJ6261, and Fernando Ramirez, CDCR #BP9916 (FAC (ECF No. 9 at 52-56) and Pl.'s Opp'n, Ex. F (ECF No. 45 at 41, 43-45)); Declaration of Stanley Mundy[4] (Pl.'s Opp'n, Ex. G (ECF No. 45 at 47)); Declaration of Minh Kha H. Phan (FAC, Ex. I (ECF No. 45 at 57)); Declaration of Joseph Garcia (FAC, Ex. I (ECF No. 45 at 58)). The Court

---

[2] Exhibit R contains no exhibit. (Id., Ex. R (ECF No. 45 at 114).)

[3] Although plaintiff's Exhibit P bears no court file-stamp, the document is included in the RJN and reflects it was filed on July 27, 2022. (RJN, Ex. 5 (ECF No. 44-10 at 80).)

[4] The Court notes that this third Mundy declaration is partially contradicted by Mundy's earlier declaration. (See FAC at 37.)

7

notes that even if these defective declarations had been considered, they would not affect the

resolution of the summary judgment motion.

## V.        UNDISPUTED FACTS

Defendant filed a statement of undisputed facts as required by Local Rule 260(a).

Plaintiff's opposition to defendant's motion for summary judgment fails to comply with Local

Rule 260(b).  (Pl.'s Opp'n.)  Rule 260(b) requires that a party opposing a motion for summary

judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit

those facts that are undisputed and deny those that are disputed, including with each denial a

citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer,

admission, or other document relied upon in support of that denial."  Local Rule 260(b).

Defendant asks the court to grant his motion because plaintiff failed to reproduce defendant's

itemized facts and clearly admit those facts that are undisputed and deny those facts that are

undisputed.  Plaintiff did not reproduce the itemized facts from defendant's statements or include

his own statement of undisputed facts within his opposition.  Because plaintiff proceeds pro se,

the court reviewed plaintiff's filings in an effort to determine whether any of these disputes

involve genuine issues.  A review of plaintiff's filings and of the evidence provided by the

parties, reveals the following material facts which are not subject to genuine dispute ("UDF"),

unless otherwise indicated.

A.  Undisputed Facts re:  Parties, Library Policy, Attendance & PLU Status

1.  At all relevant times, plaintiff was a prisoner housed at MCSP.  (FAC at 1.)

Defendant was a correctional officer at MCSP and worked in the Facility C education building.

(FAC at 2; Declaration of defendant ("Def.'s Decl.") ¶ 3 (ECF No. 44-7).)

2.  Under prison policy, inmates have access to a law library located inside Facility C

that is staffed with a librarian and an education officer.  (Heath Decl. ¶ 3 (ECF No. 44-4).)

Access to the library depended upon available resources and the recreational yard's release

schedule.  (Def.'s Decl. ¶ 5; Heath Decl. ¶ 4.)  While the library was generally scheduled to open

from 8:30 a.m. to 11:30 a.m., and from 12:30 p.m. to 2:30 p.m., Monday to Friday, the library

schedule was subject to change on a daily basis due to factors that affect the availability of

resources.  (Def.'s Decl. ¶¶ 4-5; Heath Decl. ¶ 4.)  The library only operates as long as the library is staffed and there is an education officer or other custody staff present to control inmate access to the education building.  (Def.'s Decl. ¶ 5; Heath Decl. ¶ 4.)  Because the library is reserved for use during yard time, the library remained closed to general users if yard was cancelled for the day; an exception to this policy was given to inmates with PLU status, who can access the library during operational hours irrespective of yard being open, as long as the education building and library are staffed.  (Def.'s Decl. ¶ 3; Heath Decl. ¶ 4; CDCR DOM, Section 101120.10.)  In addition, COVID-19 social distancing procedures limited library attendance to ten inmates at any given time.  (Def.'s Decl. ¶ 4.)

3.  Modified programming due to prison lockdown can impact the library's schedule by complete closure or limiting access to PLUs only.  (Def.'s Decl. ¶ 5; Heath Decl. ¶ 4.)  At any time, without coming into the library, an inmate may request access to legal materials through delivery of those materials by library staff using CDCR Form GA-22, including when an inmate is unable to access the law library.  (Def.'s Decl. ¶ 6; Heath Decl. ¶ 5.)  MCSP also used a paging program whenever the library was closed due to extraordinary circumstances, such as a prison lockdown, where inmates were limited to requesting legal materials through written request via law library paging.  (Heath Decl. ¶ 5.)  An inmate may use the paging program to request legal copies, legal forms, and in-cell legal study materials, including cases, statutes, or other legal reference materials.  (Id.)

4.  CDCR limits law library access for prisoners without impending deadlines to two hours per week, as resources are available, and grants preferences to prisoners who have court deadlines within 30 days by giving them PLU status.  (Heath Decl. ¶ 6; Cal. Code Regs. tit. 15 § 3122(b).)  Inmates with PLU status have priority in accessing the library and receive four hours of library access per week, as resources are available.  (Id.)  In submitting a request for PLU status, an inmate is required to show the court order or rule establishing a deadline.  (Id.)  There is no on-demand access to the library, even for PLUs.  (Def.'s Decl. ¶ 7; Heath Decl. ¶ 6.)  Inmates with PLU status are still limited to using the library when open during their yard time, or when otherwise issued a ducat to attend outside those hours as resources are available.  (Id.)  Under

9

CDCR policy, inmates are not permitted to use the library for non-legal use while attending as a PLU.  (Heath Decl. ¶ 6; Cal. Code Regs. tit. 15 § 3122(b)(7).)

5.  From November 2021 to March 2023, plaintiff attended the library at least 40 times, and attended as a PLU on 23 of those occasions.  (Heath Decl. ¶ 9, Ex. B (ECF No. 44-6 at 3, 5-14, 17-28, 31, 33, 36, 48, 52, 55).)

6.  Plaintiff was granted PLU status for his ongoing litigation in Gosztyla v. French, No. 2:21-cv-1403 (E.D. Cal.), Gosztyla v. Ly., No. 2:21-cv-1717 (E.D. Cal.), and Gosztyla v. Auld, No. 2:22-cv-1276 (E.D. Cal.), on the following dates:  April 12, 2022 to May 1, 2022; May 2, 2022 to May 16, 2022; August 16, 2022 to September 16, 2022; October 6, 2022 to October 23, 2022; January 3, 2023 to January 21, 2023; March 3, 2023 to March 16, 2023; and March 21, 2023 to April 10, 2023.  (Heath Decl. ¶ 8, Ex. A.)

7.  Library attendance logs demonstrate that one month prior to his first state habeas petition filing on May 18, 2022, petitioner attended the library six times.  (Id., Ex. B at AGO 009-014.)

B.  Undisputed Facts re:  Relevant Time Frame and Library Access

8.  Based on the allegations of plaintiff's amended complaint, the relevant time period at issue here is September 14, 2021 through September 3, 2022.[5]  From November 1, 2021, to September 3, 2022, plaintiff attended the law library at least 24 times.  (Heath Decl., Ex. B at AGO 001-021.)

9.  On September 14, 2021, plaintiff attempted to go to the library but was denied access; on October 5, 2021, Officer Perez confirmed the attempt.  ( FAC, Ex. G (ECF No. 9 at 64).)

10.  On September 30, 2021, plaintiff was denied library access, and Officer Perez confirmed the attempt.  (Id. at 65.)

---

[5]  The library attendance logs do not include dates prior to November 1, 2021.  (Heath Decl., Ex. B, at 2.)  In briefing on plaintiff's prior discovery motion, counsel for defendant declared that the librarian was unable to locate any responsive documents from prior to November 2021.  (Park Decl. at ¶ 6 (ECF No. 39-1).)  In addition, there are no library attendance logs from May 17 to July 10, 2022.  (Heath Decl., Ex. B at AGO 14-15.)

11.  On October 4, 2021, plaintiff was denied library access, which was confirmed by Officer Perez on October 5, 2021.  (Id. at 66.)

12.  On October 19, 2021, plaintiff was denied library access, also confirmed by Officer Perez.  (Id. at 67.)

13.  On November 4, 2021, the library was closed due to lack of staff.  (Heath Decl., Ex. B at AGO 001 (ECF No. 44-6).)

14.  Defendant provided evidence that on November 12, 2021, the library was closed, "no yard, staff present, no one allowed in."  (Id., AGO at 001-002.)  However, plaintiff provided a December 30, 2021 grievance response (log #186625) attributed to an interview with defendant who provided a different scenario, claiming plaintiff was removed from the library due to mandatory COVID-19 social distancing guidelines limiting the number of people allowed in the library.  (FAC, Ex. A (ECF No. 9 at 10).)

15.  Plaintiff attended the library the next business day, November 15, 2021, and on November 17, 2021.  (Heath Decl., Ex. B at AGO 001-002.)

16.  On November 23, 2021, there was no inmate access in the afternoon; according to the grievance response to plaintiff's complaint regarding this date, the half-hour unlocks were delayed during the afternoon session.  (Id. at AGO 003; FAC, Ex. B (ECF No. 9 at 23).)

17.  On December 20, 2021, the library opened at 1 p.m. due to lack of staff during the morning hours; only one inmate (not plaintiff) was in line at 1 p.m. to attend the library. (Heath Decl., Ex. B at AGO 005.)

18.  On December 29, 2021, the library was closed due to modified programming and lack of staff.  (Id. at AGO 006.)

19.  On December 30, 2021, plaintiff was called for library, but did not show, despite having PLU status.  (Id.)

20.  On April 18, 2022, the library was closed due to "no program, short on C/O's."[6] (Id. at AGO 009.)

---

[6]  Plaintiff claims defendant denied plaintiff access to the law library on April 18, 2022, claiming the yard was closed, but that plaintiff witnessed the librarian and library clerks enter the building.

11

21. On April 26, 2022, the library did not open until 12:30 p.m. because security cameras were being installed in the library during the morning hours.[7] (Id. at AGO 010-011.)

22. Plaintiff attended the library the next day, April 27, 2022, as a PLU but also used his PLU time for recreational purposes. (Heath Decl., ¶ 6, Ex. B at AGO 011.)

23. On May 5, 2022, plaintiff was called for library, but did not show, despite having PLU status. (Id., Ex. B at AGO 012.)

24. On July 18, 2022, the library was closed due to lack of staff. (Id. at AGO 016.)

25. On August 9, 2022, there was "no library -- no staff."[8] (Id., at AGO 018.)

26. On August 30, 2022, plaintiff attended the library from 9:05 to 10:00 a.m.[9] (Heath Decl., Ex. B at AGO 020.)

27. No inmate attended library on September 1, 2022, between 8:30 a.m. and 8:49 a.m. (Heath Decl., Ex. B at AGO 021.) On September 1, 2022, six other inmates attended library from 8:50 until 13:00.[10] (Id.)

28. Plaintiff attended the library the following day, September 2, 2022, as a PLU. (Heath Decl., Ex. B at AGO 021.)

///

---

(Def.'s Opp'n at 3, 49.) However, the library attendance log states that the library was closed due to a lack of correctional officers, which is unrelated to whether library staff was present.

[7] Plaintiff's grievance Log #251861 confirms that there was no library unlock at 8:30 a.m. on April 26, 2022; plaintiff claimed he was denied access to the law library at 9:00 a.m. by defendant, but also confirmed that no other inmates with PLU status were allowed into the library on April 26, 2022. (FAC, Ex. C (ECF No. 9 at 31).) There is no indication whether plaintiff attempted to attend the library the afternoon of April 26, 2022. (Id.)

[8] In his grievance log #302372, plaintiff claimed that at 1:15 p.m. he was waiting to enter the education building and defendant closed the door in plaintiff's face, not allowing him to enter. (FAC, Ex. F (ECF No. 9 at 50).)

[9] The parties dispute other facts regarding August 30, 2022, including whether defendant denied plaintiff access to the library before 9:05 a.m. and whether he verbally threatened plaintiff.

[10] The parties dispute other facts regarding September 1, 2022, including whether defendant denied plaintiff access to the library.

1

    C.  Undisputed Facts re:  State Court Cases

2

        It is undisputed that in 2018, plaintiff was convicted of multiple counts of violating

3 California Penal Code §§ 288a and 288.7b, and on December 2, 2018, was sentenced to an

4 indeterminate state prison term of 75 years to life plus 16 years.  People v. Gosztyla, No.

5 18FE004488 (Sac. Cnty. Cal.) (RJN, Exs. 1, 2).  Plaintiff and his co-defendant filed an appeal,

6 and the judgments were affirmed.  People v. Gosztyla, No. C088530 (3rd. Dist. App. Cal. Feb.

7 18, 2021).[11]  Counsel for both defendants filed petitions for review, and both were denied without

8 comment on May 26, 2021.  People v. Gosztyla, No. S267600 (Cal. Sup. Ct. May 26, 2021).

9 During the relevant time period, plaintiff filed three pro se state post-conviction collateral

10 challenges to his underlying criminal conviction:

11

        29.  On May 18, 2022, plaintiff filed a 50 page writ of habeas corpus with 28 exhibits

12 in the Sacramento County Superior Court, No. 22HC00314.  (RJN, Ex. 1.)  From a month prior to

13 filing the petition, plaintiff attended the library six times, with five of them as a PLU.   (Heath

14 Decl., Ex. B at AGO 009-014.)  The petition was denied on June 24, 2022 on the grounds that

15 plaintiff's claims were procedurally barred:

16

17

18

19

          Many of [plaintiff's] claims have already been presented on direct
          appeal and denied.  These are barred by the *Waltreus* rule.  [Plaintiff]
          includes  additional  claims.    However,  [plaintiff]  provides  no
          justification why the additional claims in this petition, which could
          have been but were not, presented on direct appeal.  Therefore, these
          claims are barred by the *Dixon* rule.

///

20

21

22

23

---

24

25

26

27

28

[11]  The court may take judicial notice of facts that are "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), including undisputed information posted on official websites.  Daniels-Hall v. National Education Association, 629 F.3d 992, 999 (9th Cir. 2010).  It is appropriate to take judicial notice of the docket sheet of a California court.  White v. Martel, 601 F.3d 882, 885 (9th Cir. 2010).  The address of the official website of the California state courts is www.courts.ca.gov.

1  (RJN, Ex. 2.)[12]  Plaintiff attended the library on July 19, 2022.[13]  (Heath Decl., Ex. B at AGO 16.)

2  On July 26, 2022, plaintiff filed a motion for reconsideration.  (RJN, Ex. 3.)  The Superior Court

3  denied the motion for reconsideration, finding that "the denial of a Petition for a Writ of Habeas

4  Corpus cannot be appealed and is not subject to reconsideration."  (Id., Ex. 4.)

5  30.  On July 27, 2022, plaintiff filed a petition for writ of habeas corpus in the

6  California Court of Appeal, No. C096680, which was summarily denied on August 18, 2022.

7  (Id., Exs. 5-6.)

8  31.  On August 29, 2022, plaintiff filed a petition for writ of habeas corpus in the

9  California Supreme Court, No. S281012.  (Id., Ex. 7.)  The California Supreme Court summarily

10  denied the petition on February 15, 2023.  (Id., Ex. 8.)

11  D.  Undisputed Facts re:  Federal Civil Rights Lawsuits

12  At the time plaintiff commenced this action on September 29, 2022, plaintiff had filed

13  four other federal civil rights lawsuits against correctional staff that were pending:

14  32.  Gosztyla v. French, No. 2:21-cv-1403 DJC EFB (E.D. Cal.).  This action was

15  filed on August 6, 2021, and remains pending.  Id.  On September 21, 2022, plaintiff filed a

16  motion to amend, which was unopposed, and on December 22, 2022, the first amended complaint

17  was accepted, and service of process was ordered on an additional defendant.  Id. (ECF Nos. 38,

18  42, 46.)  Plaintiff filed a timely opposition to the motion for summary judgment, timely

19  objections to the subsequent findings and recommendations, and also filed a timely response to

20  supplemental briefing.  Id. (ECF Nos. 53, 57, 70.)  Defendants' motion for summary judgment

21  was denied.  Id. (ECF No. 74.)

22  33.  Gosztyla v. Ly., No. 2:21-cv-1717 DC CKD (E.D. Cal.).  This action was filed

23

24  _____

   [12]  Pursuant to the "Waltreus rule," issues resolved on appeal cannot be reconsidered by writ of

25  habeas corpus.  In re Waltreus, 62 Cal.2d 218, 225 (1965).  Under the "Dixon rule," a "defendant desiring to bring claims in a state habeas petition, must, if possible, have pursued the claims on

26  direct appeal from his conviction."  Park v. California, 202 F.3d 1146, 1151 (9th Cir. 2000) (citing In re Dixon, 41 Cal.2d 756, 759 (1953)).

27

   [13]  Heath provided no library attendance logs for May 17, 2022 through July 10, 2022.  (Heath

28  Decl., Ex. B at AGO 014-015.)

on September 21, 2021, and remains pending.  Id.  Plaintiff filed two extensions of time to file a

second amended complaint (on March 28, 2022 and April 25, 2022);[14] both were granted, and his

second amended complaint was timely filed on May 10, 2022.  Id. (ECF Nos. 15-18, 20.)  On

March 24, 2023, while plaintiff had PLU status, he filed a response to the answer.  Id. (ECF No.

37.)  Discovery opened on July 28, 2023, and closed on November 24, 2023; plaintiff's December

18, 2023 motion for discovery was denied finding it was untimely as well as vague because it

asked that the defendant be ordered to file further responses to all of his interrogatories.  Id. (ECF

Nos. 45, 52, 55.)  On March 4, 2024, and April 1, 2024, plaintiff filed timely oppositions to two

summary judgment motions, and on June 28, 2024, filed timely objections to the June 17, 2024

findings and recommendations.  Id. (ECF Nos. 57, 61, 64.)  Plaintiff filed timely objections to the

January 15, 2025 findings and recommendations on January 27, 2025.  Id. (ECF No. 70.)

        34.  Gosztyla v. Auld, No. 2:22-cv-1276 KJM EFB (E.D. Cal.).  This action was filed

on July 19, 2022, and remains pending.  Id.  On October 17, 2022, plaintiff timely filed an

amended complaint.  Id. (ECF No. 10.)  Plaintiff's December 28, 2023 motion to compel

discovery was granted, and he was granted two extensions of time to file a second amended

complaint, which he timely filed on July 19, 2024.[15]  Id. (ECF Nos. 34, 42, 44, 45.)  Dispositive

motions are due on or before January 31, 2025.  Id. (ECF No. 53.)

        35.  Gosztyla v. Jenkins, No. 2:22-cv-1706 DJC EFB (E.D. Cal.).  Two days after

plaintiff filed this action, plaintiff filed the civil rights complaint in Jenkins on September 27,

2022.  Id.  On August 3, 2023, plaintiff filed a timely motion to compel, which was denied in part

---

[14]  In his March 28, 2022 request for extension, plaintiff stated that MCSP was experiencing an extreme lack of access to the law library due to COVID-19, with only a paging service available. (Id. (ECF No. 15).)  In the April 25, 2022 request for extension, plaintiff stated that the library was repeatedly closed due to staff shortages.  (Id. (ECF No. 17).)  The Court notes that this appears to contradict the allegations plaintiff has made in this case, but makes no finding as to this issue because credibility is not evaluated on summary judgment.

[15]  On May 2, 2024, plaintiff first sought an extension of time to obtain information to determine whether additional defendants could be identified.  (Id. (ECF No. 40).)  On June 27, 2024, plaintiff sought a second extension of time based on his continued efforts to obtain discovery from defendants.  (Id. (ECF No. 43).)

1   and granted in part.  Id. (ECF Nos. 26, 39.)  On November 9, 2023, plaintiff filed a timely

2   opposition to defendants' motion for summary judgment.  Id. (ECF Nos. 33, 34.)  On September

3   6, 2024, plaintiff filed timely objections to findings and recommendations, which were adopted in

4   full by the district court.  Id. (ECF Nos. 41, 42, 44.)  Judgment was entered for defendants on

5   September 27, 2024.  Id. (ECF No. 45.)

6       E.   Undisputed Facts re:  Retaliation

7           36.   The library only operates as long as the library is staffed, and there is an

8   education officer or other custody staff present to control inmate access to the education building.

9   (Heath Decl. ¶ 4.)

10          37.   On April 18, 2022, the library attendance log notes "no program, short on

11  C/O's."  (Heath Decl., Ex. B at AGO 009.)

12          38.   On April 26, 2022, the library was closed in the morning because video cameras

13  were being installed.[16]  (Heath Decl., Ex. B at AGO 010.)

14          39.   Plaintiff, with PLU status, was able to attend the library on August 30, 2022,

15  from 9:05 a.m. to 10:00 a.m.[17]  (Heath Decl., Ex. B at AGO 020.)

16          40.   On September 1, 2022, the library was open; several inmates attended the library

17  from 8:50 to 13:00.[18]  (Heath Decl., Ex. B at AGO 021.)

18          41.   Plaintiff, with PLU status, attended the library the next day, September 2, 2022.

19  (Heath Decl., Ex. B at AGO 021.)

20          42.   The record reflects that plaintiff did not receive any written write-ups from

21
22  [16]  Plaintiff alleges defendant threatened on April 26, 2022 that if a grievance was filed by
    plaintiff, plaintiff would "never get in the law library."  (FAC at 5.)  Defendant denies making
    any threats on plaintiff's ability to access the library or to file grievances.  (Def.'s Decl. at ¶ 8.)

23
24  [17]  The parties dispute whether defendant denied plaintiff access to the library at 8:30 a.m. on
    August 30, 2022.  Plaintiff also alleges defendant threatened on August 30, 2022 that if plaintiff
25  "wanted to play these games," plaintiff would "get a write-up and never get into the library."
    (FAC at 5, 41.) Defendant denies refusing plaintiff law library access for any improper reason and
26  denies that he threatened plaintiff.  (Def.'s Decl. at ¶ 8.)

27  [18]  Plaintiff alleges defendant denied plaintiff access to the library on September 1, 2022 (FAC at
    6), which defendant denies.  (Def.'s Decl. at ¶ 8.)
28

1  defendant during the relevant time period.

2      43.  The record reflects no counseling chronos or rules violation reports issued

3  against plaintiff for violating any library policy, or being removed from the library or the PLU list

4  for any alleged violation of library policy.

5  **VI.    PLAINTIFF'S FIRST CLAIM:  ACCESS TO THE COURTS**

6      A.  Legal Standards

7      Under the First and Fourteenth Amendments to the Constitution, state prisoners have a right

8  of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996); Phillips v. Hust, 477 F.3d

9  1070, 1076 (9th Cir. 2007), overruled on other grounds by Hust v. Phillips, 555 U.S. 1150 (2009).

10  "[A]ccess to the courts means the opportunity to prepare, serve and file whatever pleadings or

11  other documents are necessary or appropriate in order to commence or prosecute court

12  proceedings affecting one's personal liberty."  Lewis v. Casey, 518 U.S. at 346 (quoting Hatfield

13  v. Bailleaux, 290 F.2d 632, 637 (9th Cir. 1961)).  The court in Hatfield added that such access

14  also included the opportunity to "to send and receive communications to and from judges, courts

15  and lawyers concerning such matters.  Whether or not in a particular case the access afforded is

16  reasonable depends upon all of the surrounding circumstances."  Id.

17      Traditionally, courts have identified two types of access claims:  "those involving

18  prisoners' right to affirmative *assistance*, and those involving prisoners' right to litigate without

19  active *interference*."  Silva v. Di Vittorio, 658 F.3d 1090, 1102 (9th Cir. 2011) (emphasis in

20  original), overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th

21  Cir. 2015).

22      The right to assistance is limited to direct criminal appeals, habeas petitions, and civil

23  rights actions.  Lewis v. Casey, 518 U.S. at 354.  But where interference is alleged, the right of

24  access to courts does not stop at the pleading stage of a civil rights or habeas litigation.  Silva, 658

25  F.3d at 1102 (citations omitted).  Prisoners also have the right to pursue claims that have a

26  reasonable basis in law or fact without active interference by prison officials.  Id. at 1103-04

27  (finding that repeatedly transferring the plaintiff to different prisons and seizing and withholding

28  all of his legal files constituted active interference where the prisoner alleged cases had been

17

1    dismissed).  This right forbids state actors from erecting barriers that impede the right of access to

2    the courts by incarcerated persons.  Id. at 1102 (internal quotations omitted).

3        In both types of access to the courts claims, the defendant's actions must have been the

4    proximate cause of actual prejudice to the plaintiff.  Silva, 658 F.3d at 1103-04; Phillips, 477 E.

5    3d at 1077.  "The touchstone of proximate cause in a § 1983 action is foreseeability."  Phillips,

6    477 F.3d at 1077 (citations omitted).

7        Where, as here, a prisoner asserts a backward-looking denial of access claim, seeking a

8    remedy for a lost opportunity to present a legal claim, the prisoner must adduce evidence

9    demonstrating:  (1) the loss of a "nonfrivolous" or "arguable" underlying claim; (2) the official

10   acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not

11   otherwise available in a future suit.  See Christopher v. Harbury, 536 U.S. 403, 413-14 (2002).

12   "An arguable (though not yet established) claim [is] something of value."  Lewis v. Casey, 518

13   U.S. at 353.  Therefore, to demonstrate the existence of a nonfrivolous claim, plaintiffs "need not

14   show, ex post, that [they] would have been successful on the merits had [their] claims been

15   considered."  Allen v. Sakai, 48 F.3d 1082, 1085 (9th Cir. 1994).  To hold otherwise "would

16   permit prison officials to substitute their judgment for the courts' and to interfere with a

17   prisoner's right to access on the chance that the prisoner's claim would eventually be deemed

18   frivolous."  Id.  Examples of actual prejudice include the "inability to meet a filing deadline or to

19   present a claim."  Lewis v. Casey, 518 U.S. at 348 (citations and internal quotations omitted).

20       B.  Discussion

21       Plaintiff's access to the courts claim fails because plaintiff has not identified any actual

22   injury he sustained as a result of being denied access to the law library.  See Christopher, 536 U.S.

23   at 413-14; Silva, 658 F.3d at 1103-04; Phillips, 477 E. 3d at 1077.  Plaintiff argues that defendant's

24   attempts to hinder plaintiff's access to the law library demonstrates plaintiff was denied access to

25   the courts.  (Pl.'s Opp'n at 4, 5.)  Though plaintiff was denied access to the law library on several

26   occasions, even when he had PLU status, to succeed on an access to the courts claim, plaintiff must

27   demonstrate that he sustained an actual injury to a nonfrivolous or arguable underlying legal claim.

28   Christopher, 536 U.S. at 413-14.  Plaintiff has failed to demonstrate this.  Instead, the undisputed

18

1  facts establish that plaintiff frequently attended the law library and successfully filed a wide variety

2  of documents in both state and federal court, litigating multiple actions simultaneously.

3      In the FAC, plaintiff argued that he "was litigating his active criminal appeal of a life

4  sentence, which without question is a nonfrivolous claim." (FAC at 4.)  In his deposition,

5  plaintiff claimed that defendant interfered with plaintiff's access to the law library while plaintiff

6  was preparing his habeas petition which was filed in No. 22HC00314 on May 18, 2022.  (Pl.'s

7  Dep. at 36.)  In his opposition, plaintiff argues that he did not have the ability to make copies of

8  his exhibits, and had to inform the state court that he would submit his exhibits separately after

9  mailing documents home to be copied and mailed back.  (Pl.'s Opp'n at 3.)  However, library

10  attendance logs show that prior to May 18, 2022, petitioner attended the library on April 12, 13,

11  19, 22, and 27, 2022, as well as May 2, 9, and 10, 2022.  (Heath Decl., Ex. B, at AGO 009-013.)

12  Further, the state court records demonstrate that between May and August of 2022, plaintiff was

13  able to file three state habeas petitions, as well as a motion for reconsideration.

14      In addition, none of plaintiff's state court filings were denied because plaintiff failed to

15  file a required document in any of the three state court actions.  In Sprinkle v. Robinson, 2007

16  WL 2389984 (E.D. Cal. Aug. 30, 2007), the prisoner adduced evidence that defendant Robinson

17  refused to make photocopies of documents needed to attach to the habeas petition, and the state

18  court denied the petition in part due to the lack of supporting documentation and because he

19  "made no offer of proof by way of additional evidence." Id. at *7.  Unlike the prisoner in

20  Sprinkle, plaintiff does not argue, and provided no evidence to show, that plaintiff's habeas

21  petition was denied for lack of supporting evidence or that defendant Gruenwald refused to make

22  photocopies.  Plaintiff does not provide the date or dates he allegedly attempted, but failed, to

23  obtain such photocopies.  Thus, plaintiff fails to show that defendant Gruenwald "hindered

24  [plaintiff's] efforts to pursue a [nonfrivolous] legal claim," or to "meet a filing deadline or to

25  present a claim." Lewis, 418 U.S. at 348, 351, 353.

26      Plaintiff fails to demonstrate that defendant's actions caused plaintiff to lose a

27  nonfrivolous or arguable legal claim in state court.  The order denying the petition in 22HC00314

28  found that plaintiff's claims were procedurally defaulted, meaning some of the claims had been

1    included and addressed in his appeal, and he did not include other claims on appeal, but could

2    have.  Plaintiff provided no evidence demonstrating that additional library time could have

3    avoided such procedural default findings.

4         Further, plaintiff's request for reconsideration was not procedurally appropriate under

5    California state law; the state court found that plaintiff could not appeal the denial of a writ of

6    habeas corpus and the denial was not subject to reconsideration.  (RJN, Ex. 4.)  Therefore, the

7    Court cannot construe the denial of plaintiff's motion for reconsideration as a loss of a

8    "nonfrivolous" or "arguable" underlying claim.  In addition, plaintiff has not shown that the

9    denial of the request for reconsideration was the result of defendant's actions.

10        As to plaintiff's federal civil rights actions, plaintiff also fails to show that defendant

11    actively interfered with plaintiff's ability to litigate his claims in his federal civil rights cases

12    pending when he filed this action.  The record demonstrates that during the relevant time period,

13    plaintiff was able to frequently visit the law library and appropriately responded to deadlines in

14    those federal cases, as set forth in detail above.[19]  These federal court records reflect no actual

15    injury to plaintiff's court access to his federal civil rights actions during the relevant time period.

16        Plaintiff argues that he was "forced to request multiple extensions on multiple filings."

17    (Pl.'s Opp'n at 4.)  However, he cites no specific case in support of this broad assertion, not even

18    identifying whether such extensions were filed in his state court actions or his federal civil rights

19    actions.  Further, the extensions sought in his two federal civil rights cases were granted to allow

20    him additional time to file an amended complaint so there was no prejudice to plaintiff.  As

21    discussed above, those cases do not demonstrate plaintiff sustained an actual injury to his court

22    access as required and defined in Christopher, 536 U.S. at 413-14.  Finally, under the subheading

23    "Actual Injury," plaintiff recounts defendant's multiple alleged threats to write plaintiff up.  (Pl.'s

24    _____

25    [19]  Plaintiff's arguments about problems meeting court deadlines in Gosztyla v. Ly, No. 2:21-cv-
      1717 DC CKD, fail here because they occurred after the relevant time period at issue in this case
26    (i.e., September 14, 2021 to September 3, 2022) and therefore impermissibly go beyond the
      claims in this case.  Regardless, the denial in Gosztyla v. Ly of plaintiff's motion to compel on
27    timeliness grounds would not be construed as the loss of a nonfrivolous or arguable underlying
      claim, Christopher, 536 U.S. at 413-14, because it is not a dispositive order.  Fed. R. Civ. P.
28    72(a).

1   Opp'n at 5.)  But such threats are not relevant to plaintiff's access to the courts claim.

2        Viewing the record in the light most favorable to plaintiff, there is no triable issue of

3   material fact as to whether defendant actively interfered with plaintiff's ability to file his state

4   habeas petitions or to litigate his federal civil rights claims because plaintiff did not sustain an

5   actual injury as defined in <u>Christopher</u>, 536 U.S. at 413-14.  Defendant is entitled to summary

6   judgment on plaintiff's access to the courts claim.

7   **VII.   PLAINTIFF'S SECOND CLAIM:  RETALIATION**

8        In plaintiff's second claim for retaliation, he alleges that defendant retaliated against

9   plaintiff by denying him access to the library because plaintiff filed grievances against defendant.

10       A. <u>Legal Standards</u>

11        "Prisoners have a First Amendment right to file grievances against prison officials and to

12   be free from retaliation for doing so."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012)

13   (citing <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009)).  A viable retaliation claim in the

14   prison context has five elements:  "(1) An assertion that a state actor took some adverse action

15   against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

16   (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

17   reasonably advance a legitimate correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68

18   (9th Cir. 2005).  The alleged adverse action must be of the type to chill or silence a person of

19   ordinary firmness, or must have caused plaintiff direct and tangible harm.  <u>Rhodes</u>, 408 F.3d at

20   568 n.11 and related text; <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

21       B. <u>The Parties' Positions</u>

22        In his motion, defendant contends that his decisions to deny plaintiff access to the law

23   library "during closing hours do not amount to an adverse action sufficient to deter a person of

24   ordinary firmness from further first Amendment activities."  (Def.'s Mot. at 18.)  Defendant

25   argues that while plaintiff could not attend the library on certain occasions, the evidence

26   demonstrates that plaintiff had other opportunities to use the library to make up for days he could

27   not.  Further, defendant notes that plaintiff had other means of accessing legal materials when the

28   library was closed.  But even if such occasional denials are found to be an adverse action,

1  defendant points out that plaintiff submitted multiple grievances against defendant, demonstrating

2  that the occasional denial of physical access to the library had no chilling effect on plaintiff's

3  ability to file grievances.  (Id.)  Defendant argues that the occasional denial of physical access to

4  the library constituted de minimus harm to plaintiff and thus does not constitute an adverse

5  action.  (Id. (citing Watison, 668 F.3d at 1114).)

6        Also, defendant disputes plaintiff's contention that defendant's "threats" of disciplinary

7  violations amount to an adverse action.  During his deposition, plaintiff explained that when he

8  attempted to attend the library but could not, defendant ordered him to return to his housing unit

9  and threatened to give him a "write-up" for failure to obey an order.  (Id. (citing Pl.'s Dep. at

10  44:18-23; 46:12-19.)  Defendant acknowledges that a threat of harm can constitute an adverse

11  action, but argues that defendant did not take any adverse action against plaintiff when defendant

12  told plaintiff that he would get a "write-up" if he did not comply with the order to return to the

13  housing unit.  (Id. (citing Brodheim, 584 F.3d at 1270)).)  Defendant argues that plaintiff tries to

14  conflate defendant's verbal warning as a "threat," but contends that a "prison official's warning of

15  progressive discipline is not a threat of adverse action."  (Id. (citing Garcia v. Blahnik, 2017 WL

16  1161225 at *4 (S.D. Cal. Mar. 29, 2017) (defendant had the right to put plaintiff on notice that

17  continuing to interfere with the functioning of the library has consequences)).)  Because the

18  evidence shows defendant only denied plaintiff library access when the library was closed,

19  defendant argues that defendant had the right to order plaintiff to return to his housing unit, and to

20  warn plaintiff that future failures to obey orders would result in progressive discipline.  (Id.)

21        But even if the Court finds plaintiff suffered an adverse action, defendant contends that

22  plaintiff failed to produce evidence that plaintiff's grievances were the substantial or motivating

23  factor that caused defendant to deny plaintiff access to the library on certain occasions, and to

24  warn plaintiff about receiving a disciplinary report.  (Id. at 19.)  Defendant points to plaintiff's

25  deposition testimony where he testified that defendant used "justifications" to deny plaintiff

26  library access, and argues that plaintiff failed to adduce evidence that such "justifications" were

27  false or pretextual.  (Id.)  Defendant contends the evidence demonstrates that any time defendant

28  denied plaintiff library access, "his decision was supported by prison policy in not allowing

1  unsupervised inmate access to the library." (Id.)  As to plaintiff's contention that he could not

2  access the library when the yard was down, defendant argues that this only shows defendant

3  "acted in compliance with the prison rules." (Id.)  Further, defendant contends that the evidence

4  supports an inference that defendant's warnings of progressive discipline were primarily

5  motivated by plaintiff's repeated failures to follow library rules and obey orders, not by plaintiff's

6  grievances.  Defendant argues that plaintiff fails to carry his burden in proving a causal

7  connection between defendant's actions and plaintiff's protected conduct. (Id.)

8      Finally, defendant argues that plaintiff cannot demonstrate that defendant's actions did not

9  advance a legitimate penological purpose.  Because prison officials may regulate the time,

10  manner and place in which library facilities are used, defendant contends the evidence shows

11  defendant was following the "prison's policies in allocating access to finite law library resources,

12  and cannot violate the Constitution." (Id. at 20.)  Further, defendant argues that defendant's

13  verbal warnings of progressive discipline were necessary to discourage plaintiff from violating

14  CDCR policies and to ensure the safety and security of the prison, which is a legitimate

15  penological purpose. (Id.)

16      In opposition, plaintiff argues that defendant's actions had no legitimate goal for the

17  safety of the institution because denying access for reasons not supported by policy does not meet

18  such goal, and permitting selective access to the library also does not meet such a goal. (Pl.'s

19  Opp'n at 6.)  Plaintiff points to the declarations from other inmates "corroborating the events

20  where defendant denied access to plaintiff with no legitimate cause." (Id.)

21      In reply, defendant contends that despite plaintiff's repeated claim that defendant's actions

22  constituted retaliation, plaintiff provided no evidence to rebut defendant's evidence that plaintiff

23  failed to meet each element required under Rhodes, 408 F.3d at 567-68. (Def.'s Reply at 4.)

24  Defendant argues that plaintiff failed to adduce evidence that it was plaintiff's protected conduct

25  that motivated defendant's conduct.  Defendant argues that the evidence shows that on all of the

26  dates identified by plaintiff the library was either "down or delayed for legitimate reasons such as

27  lack of staff and modified programming," which comports with prison policies. (Id.)  Defendant

28  also contends there is no evidence that defendant's conduct was adverse to plaintiff because he

1    was able to use the library on numerous occasions throughout the relevant time period. (Id.)

2    Defendant also points out plaintiff does not identify any chilling effect, and plaintiff's own

3    exhibits show he filed grievances about the conduct at issue. (Id. at 4-5.) Finally, defendant

4    argues that plaintiff failed to prove the absence of a legitimate correctional goal. (Id. at 5.) In

5    evaluating such correctional goals, defendant contends that the Court must give deference to

6    prison officials. (Id. (citing Sandin v. Connor, 515 U.S. 472, 482 (1995)).) Defendant claims that

7    "[r]egulating inmate use of the library based on availability of resources furthers the security and

8    operational goals of the prison." (Id.) Because plaintiff failed to provide evidence meeting all of

9    the elements of a retaliation claim, defendant argues that he is entitled to summary judgment.

10         C.  Discussion

11            Plaintiff alleges defendant retaliated against plaintiff by denying plaintiff access to the

12   library. In his deposition, plaintiff admitted that defendant did not deny plaintiff entry to the

13   library every time. (Pl.'s Dep. at 22:13-16.) Plaintiff contends defendant targeted plaintiff

14   because of his "many formal grievances and complaints against the misconduct by defendant."

15   (FAC at 5.) The record shows plaintiff filed seven grievances concerning defendant's alleged

16   interference with law library access:  November 14, 2021, grievance log #186625; November 29,

17   2021, grievance log # 192024; May 2, 2022, grievance log # 251861; May 16, 2022, grievance

18   log # 242203; August 30, 2022, grievance log #295922; September 3, 2022, grievance log

19   #302368; and September 3, 2022, grievance log #302372. (FAC at 12-13, 19, 25-26, 32, 42, 47,

20   51.) Defendant responds that he always allowed plaintiff to use the library "as long as it was

21   open and had capacity, or so long as he was otherwise cleared for access by ducat or

22   appointment," and the only times defendant did not permit plaintiff access was "when it violated

23   the prison's policies." (Def.'s Decl. at ¶ 7.)

24            The first grievance against defendant was signed by plaintiff on November 14, 2021. (FAC

25   at 12-13.) Plaintiff alleges defendant retaliated against plaintiff based on the filing of grievances

26   against defendant, but because defendant could not have acted on grievances not yet submitted,

27   there is no causal connection between such grievances and any alleged retaliation by denying law

28   library access prior to November 14, 2021. See Wright v. Kebnan, 2013 WL 4008808, at *11-12

                                                24

1    (E.D. Cal. Aug. 5, 2013) (causal connection not shown "because it was impossible for the denial

2    of his appeal log to affect actions performed before that date").

3         Further, plaintiff's inability to attend the law library on certain dates, including April 18,

4    2022, the morning of April 26, 2022, August 9, 2022, and at 8:30 a.m. on September 1, 2022,[20]

5    does not constitute an adverse action because the library was closed or entry was delayed, and

6    denial of library access under such circumstances is a legitimate penological reason. "[T]he

7    Constitution does not guarantee a prisoner unlimited access to the law library; prison officials of

8    necessity must regulate the time, manner and place in which library facilities are used." Harris v.

9    Yates, 2008 WL 60406, *2 (N.D. Cal. 2008) (citing Lindquist v. Idaho State Bd. Of Corrections,

10   776 F.2d 851, 858 (9th Cir. 1985); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)

11   ("Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate

12   policies and goals of the correctional institution in the preservation of internal order and

13   discipline, maintenance of institutional security, and rehabilitation of prisoners.")).

14         Though there are various disputes regarding what happened on August 30, 2022 and

15   September 1, 2022, those disputes are not material to a determination of retaliation because

16   plaintiff cannot establish all retaliation elements. For example, there is a dispute regarding

17   whether plaintiff was denied access to the library by defendant at 8:30 a.m. on August 30, 2022

18   and whether defendant verbally threatened plaintiff. Even if plaintiff was denied access at 8:30

19   a.m. and threatened on August 30, 2022, it is undisputed that plaintiff did attend the library on

20   August 30, 2022 from 9:05 a.m. to 10:00 a.m. (Heath Decl., Ex. B at AGO 020.) Therefore, the

21   alleged denial of library access at 8:30 a.m. was not an adverse action as plaintiff was able to

22   access the library shortly after, and for an extended period. It also did not cause plaintiff direct

23   and tangible harm, or chill plaintiff's exercise of his First Amendment rights as plaintiff later filed

24   a grievance against defendant that same day related to the alleged August 30, 2022 conduct.

25         There is also a dispute of fact regarding whether plaintiff was denied access to the library

26

27   _____

[20]  Though the parties dispute certain facts as to September 1, 2022, it is undisputed that no
28   inmate attended on September 1, 2022 until 8:50, which supports defendant's position that the
     8:30 opening of the library was delayed.

1   by defendant on September 1, 2022.  But even if plaintiff was denied access on September 1,

2   2022, it is undisputed that plaintiff did attend the library the next day on September 2, 2022.

3   (Heath Decl., Ex. B at AGO 021.)  Therefore, the denial of library access on September 1, 2022

4   did not cause plaintiff any direct and tangible harm where plaintiff was able to access the library

5   the next day.  It also did not chill plaintiff's exercise of his First Amendment rights as plaintiff

6   later filed two grievances against defendant on September 3, 2022.

7          Overall, even when viewing the record in the light most favorable to plaintiff, a

8   reasonable jury could not return a verdict for plaintiff on his retaliation claim because defendant

9   did not take adverse action against plaintiff that chilled plaintiff's exercise of his First

10  Amendment rights.  The record establishes that plaintiff frequently and regularly accessed the

11  library during the time period at issue in this case (at least 24 times), including shortly after it is

12  alleged that defendant denied plaintiff access; this is despite the library having been closed or

13  having its hours shortened for various legitimate reasons during the time period at issue; and that

14  plaintiff frequently and regularly exercised his First Amendment rights by filing several (seven)

15  grievances against defendant.  During the time period at issue in this case, plaintiff also actively

16  litigated his multiple cases in state and federal court.

17         In conclusion, the Court recommends that defendant's motion for summary judgment on

18  plaintiff's retaliation claim be granted.

19  **VIII.  QUALIFIED IMMUNITY**

20         Defendant argues that the "Constitution does not guarantee a prisoner unlimited access to

21  a law library," and prison officials may reasonably limit that access in the interest of the

22  institution's security and orderly operations.  (Def.'s Mot. at 21 (citing Lindquist, 776 F.2d at

23  858, Oltarzewski v. Ruggiero, 830 F.2d 136, 138 (9th Cir. 1987).  Defendant argues that plaintiff

24  "would have been denied access because the library was not open during the times he allegedly

25  attempted to attend," and contends the law was not so clear that a reasonable officer would have

26  known that limiting plaintiff's use of the library in this way was unlawful, particularly where

27  plaintiff had other opportunities to attend the library.  (Def.'s Mot. at 21.)

28         "The doctrine of qualified immunity protects government officials 'from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity shields an officer from liability even if his or her action resulted from "'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)).

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case."  Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223, 236 (2009) (the two factors set out in Saucier need not be considered in sequence.)).  A right is "clearly established" when, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Because the Court found that defendant did not violate plaintiff's First and Fourteenth Amendment rights, no analysis of qualified immunity is required.

## IX.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED that defendant's request for judicial notice (ECF No. 44-9) is granted.

Further, IT IS RECOMMENDED that defendant's motion for summary judgment (ECF No. 44) be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

1  objections shall be filed and served within fourteen days after service of the objections.  The

2  parties are advised that failure to file objections within the specified time may waive the right to

3  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4

5  Dated:  February 10, 2025

6                                                                                           CHI SOO KIM

7  /1/gosz1725.msj                                                UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28